UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                  Case No. 17-cr-20399

v.

                                  HON. MARK A. GOLDSMITH

SEAN PETRIE,

        Defendant.

_____/

## OPINION & ORDER
## DENYING DEFENDANT'S MOTION FOR SUPPRESSION OF EVIDENCE (Dkt. 39)

This matter is before the Court on Defendant's motion for suppression of evidence (Dkt. 39). The issues have been fully briefed. Because the facts and arguments are adequately presented in the briefs and because oral argument will not significantly aid the decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2). For the reasons that follow, the Court denies Defendant's motion.

### I. BACKGROUND

Defendant Sean Petrie is charged with two counts of possession with intent to distribute a controlled substance (cocaine and cocaine base), 21 U.S.C. § 841(a)(1); one count of felon in possession of a firearm, 18 U.S.C. § 922(g)(1); and one count of possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A).

On October 24, 2016, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") secured a search warrant for a house on Beaconsfield Street in Detroit. See Search Warrant, Ex. 1 to Def. Mot. (Dkt. 39-1). Petrie was a prior resident of that house. Rees Aff. in Supp. of Warrant ¶ 63 (Dkt. 39-1). In the affidavit supporting the warrant, Special Agent Brady Rees described

twelve separate controlled transactions.  See generally id. ¶¶ 9-60.  In each of these transactions, ATF, through a confidential informant, made contact with either Krystal Williams or Roman Mcconico, with Delano Harper acting as the supplier of the drugs.

For the last two transactions, Rees averred that ATF agents witnessed Harper drive to the Beaconsfield house shortly after their informant contacted Mcconico.  See id. ¶¶ 50, 55.  Agents then witnessed their informant purchase cocaine from Mcconico, who appeared to retrieve the drugs from Harper.  See id. ¶¶ 52, 57.  Before these purchases took place, a phone number believed to be registered to Mcconico called a phone number believed to be registered to Harper several times.  Id. ¶ 66.  After the calls between Mcconico and Harper, the phone registered to Harper called a phone number registered to Petrie.  Id.  Based on this information, the magistrate judge signed a search warrant for the Beaconsfield house.  When executing the search warrants, ATF agents found sixty grams of cocaine and twelve grams of cocaine base, each in separate plastic bags.  Agents also found a pistol and a box of ammunition.

Following the indictments of both Harper and Petrie, the Government informed Petrie's counsel that there was a possibility that the man identified in the affidavit as Harper during the last two transactions was in fact somebody else.  See Government Letter, Ex. 2 to Pl. Resp. (Dkt. 41-3).  Petrie then brought this motion, arguing that the affidavit failed to state sufficient facts to establish probable cause, and that the affidavit contained a knowing, intentional, deliberate false statement, or one made with reckless disregard to the truth.

## II. STANDARD OF REVIEW

For a search warrant to be valid, it must be supported by probable cause.  U.S. Const. amend. IV ("[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.").  To

determine whether an affidavit establishes probable cause, an issuing magistrate must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [her], including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). Accordingly, the affidavit must demonstrate "a nexus between the place to be searched and the evidence sought." United States v. Laughton, 409 F.3d 744, 747-748 (6th Cir. 2005) (quoting United States v. Carpenter, 360 F.3d 591, 594 (6th Cir. 2004)) (internal quotation marks omitted).

In reviewing the magistrate's probable-cause determination, this Court's task is to ensure that the magistrate had a "substantial basis" for her conclusion. Gates, 462 U.S. at 238-239. To encourage the use of and reliance on judicially-approved warrants in the course of law enforcement investigations, "reviewing courts are to accord the magistrate's determination 'great deference,'" and a probable-cause determination "should only be reversed if it was arbitrarily exercised." United States v. Allen, 211 F.3d 970, 973 (6th Cir. 2000) (en banc) (quoting Gates, 462 U.S. at 236). "A defendant is entitled to a hearing to challenge the validity of a search warrant if he 'makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and . . . the allegedly false statement is necessary to the finding of probable cause.'" United States v. Graham, 275 F.3d 490, 505 (6th Cir. 2001) (quoting Franks v. Delaware, 438 U.S. 154, 155-156 (1978) (alteration in original)). Thus, if probable cause would be established even without the false statement, no hearing is required.

## III. ANALYSIS

Regardless of whether any allegedly false statements were made knowingly, intentionally, or with reckless disregard, those statements would not affect the finding of probable cause. Petrie objects to the description of transactions eleven and twelve in the search warrant affidavit, in light of the Government's letter that the person identified might not actually have been Harper. However, the following statements from the affidavit form the basis for the finding of probable cause. For transaction eleven, the affidavit describes that the ATF informant conducted a controlled purchase of cocaine from Mcconico through his supplier Harper. Rees Aff. ¶ 50 (Dkt. 39-1). The informant contacted Mcconico, id., who then proceeded to call Harper, id. ¶ 64. After the informant contacted Mcconico, agents saw Harper exit his residence and enter his vehicle and go to the Beaconsfield house. Id. ¶ 51. Harper left the house shortly after, returned to his home, and proceeded to the location of the transaction. Id. After Harper arrived at the location of the transaction, the informant provided cash to Mcconico, who then walked to Harper's vehicle and emerged a few minutes later and gave the informant cocaine. Id. ¶ 52. A similar sequence of events occurred during transaction twelve. Id. ¶¶ 55-58. During both transactions, Mcconico was in phone contact with a person believed to be Harper. Id. ¶ 62. After the calls between Mcconico and Harper, Harper's phone made several calls to Petrie. Id. ¶ 66.

Even assuming Petrie is correct that the agents falsely named Harper in the affidavit, there are sufficient facts set forth to establish probable cause to search the Beaconsfield address. In both transactions, the supposedly-misidentified person travelled to and from that house shortly after receiving a phone call from Mcconico; that call from Mcconico immediately followed the informant's contact requesting drugs. This provides a substantial basis to find probable cause that contraband might be found in the house. The identity of the supposedly-misidentified person is irrelevant to the finding of probable cause to search the home, because the circumstances form a

substantial basis to make that finding whether that person was Harper or anybody else.  See, e.g.,

United States v. Sample, No. 11-20386, 2012 WL 715880, at *5 (E.D. Mich. Mar. 6, 2012) ("The

misidentification is not material to the probable cause to search the Teppert address. . . . The

statements are simply not material to a finding of probable cause to search the location.").  There

was probable cause to search the Beaconsfield house because of the sequence of events that led

police to the house – (i) the informant contacting Mcconico to request drugs, (ii) Mcconico calling

someone, (iii) that someone going to the Beaconsfield house, (iv) that someone proceeding to the

location of the transaction, and (v) the transaction being completed – not because of the particular

identity of any of the people involved.  Accordingly, there would still be probable cause to search

the Beaconsfield address even if Harper's name were excised from the warrant.

## IV. CONCLUSION

Because the probable cause determination has a substantial basis and is not dependent on

the identity of the person named in the affidavit, Petrie's motion to suppress (Dkt. 39) is denied.[1]

SO ORDERED.

Dated:  February 11, 2019                     s/Mark A. Goldsmith
        Detroit, Michigan                     MARK A. GOLDSMITH
                                              United States District Judge

---

[1] Petrie's motion to dismiss superseded an earlier-filed motion to dismiss.  Accordingly, the earlier-filed motion (Dkt. 38) is denied as moot.